UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| MONTICELLO BANKING COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 13-17-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| EVEREST NATIONAL INSURANCE | ) | **MEMORANDUM OPINION** |
| COMPANY, and | ) | **&** |
| | ) | **ORDER** |
| GARRY HAMMER, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Bank customers expect their investment to be protected by the Federal Deposit Insurance Corporation ("FDIC"). One mechanism which the FDIC requires banks to employ is an insurance policy to cover the costs of litigation. A Directors and Operators Policy ("D&O Policy") pays all litigation costs for employees and all litigation costs beyond a retainer fee for the bank. When a disgruntled customer sued Monticello Banking Company ("Monticello") and its employee Garry Hammer (both Kentucky citizens), the D&O Policy held through New Jersey-based Everest National Insurance Company ("Everest") kicked into place. Disagreement over performance of that policy gave rise to the case at hand. Monticello initiated litigation against Everest and Hammer that has been removed to federal court, despite the presence of a Kentucky plaintiff and co-defendant.

**I**

**A**

This matter is before the Court on Co-Defendant Hammer's Motion to Dismiss [R. 6] under Federal Rule of Civil Procedure ("FRCP") 12(b)(6). Connected to the motion to dismiss are Plaintiff Monticello's Motion to Remand [R. 13] and Defendant Everest's Motion to Dismiss the claims against Hammer under FRCP 12(c). [R. 22-23.] Because the arguments in these motions are so intertwined with each other, the Court will consider and decide them together.

Defendant Everest claimed that removal was proper on the following three bases: federal question jurisdiction, diversity jurisdiction based on fraudulent joinder, and diversity jurisdiction based on fraudulent misjoinder. [R. 1 at 4, 8, 10; R. 23 at 3.] The claim of federal question jurisdiction in this case is not well-founded. Everest's invocation of diversity jurisdiction is well-founded, however, because Monticello has not stated a valid claim against Co-defendant Hammer, and thus Hammer is not a real party in interest, and his citizenship is not considered for purposes of diversity. Consequently, the Plaintiff's motion to remand will be DENIED, and Co-Defendant Hammer's motion to dismiss will be GRANTED. This result will then render moot Defendant Everest's motion to dismiss under FRCP 12(c).

**B**

This case is an insurance coverage action originally filed in Wayne County Circuit Court in Wayne County, Kentucky, on December 20, 2012. [R. 1 at 2.] Plaintiff Monticello is a Kentucky corporation with its principal place of business in Kentucky. [R. 1 at 1.] Defendant Everest is a Delaware corporation with its principal place of business in New Jersey. [*Id*.] Co-defendant Hammer is an individual resident and citizen of Kentucky. [*Id*.] Monticello had purchased two separate insurance policies from Everest that are at issue in the dispute between them. One, a D&O Policy, provides general coverage for litigation expenses incurred by Monticello when defending its directors and officers. [R. 1 at 2.] The other, a Financial

2

Institution Bond (the "Fidelity Bond"), provides general coverage for Monticello's direct losses caused by dishonest employees. [*Id.*] On December 19, 2011, a customer of Monticello's named Michael Barrick sued both Monticello and Monticello's employee and officer Garry Hammer for inducing Barrick to purchase a business on false information and to participate in improper loans. [R. 1 at 2-3; R. 13 at 4.] Because of Monticello's insurance policies, Everest identified defense counsel Matthew Breetz from Stites & Harbison to defend Hammer in the lawsuit. [R. 1 at 3.] When notified of the suit, Monticello rejected Everest's choice of defense counsel and instead retained its longtime counsel Frost Brown Todd, LLC to defend Monticello's interests in the case. [R. 13 at 4-5.]

Monticello insisted that Frost Brown Todd act as counsel and demanded that Everest pay costs involved in retaining duplicate counsel. [*Id.*] Everest refused to pay the costs and alleged that Monticello breached the D&O Policy by selecting its own counsel. [*Id.*] Monticello then sued Everest, alleging that Everest breached its obligations under both insurance policies when it failed to reimburse Monticello for legal expenses directly related to Hammer's dishonest conduct, and that Monticello is entitled to indemnification under the insurance policies. [R. 1 at 3; R. 13 at 5.] Everest responded by filing counterclaims against Monticello for not reimbursing Everest for the legal fees incurred by Everest's chosen counsel. [R. 1 at 3; R. 13 at 5-6.] Among other things, Monticello also sought declaratory judgments that under the D&O Policy and Kentucky law it had no duty to pay Breetz's fees, that it may not indemnify Hammer for any expenses, and that Everest had a duty to reimburse Monticello for Frost Brown Todd's fees. [R. 1 at 4.] Hammer was included as a co-defendant in this action because costs at issue were incurred in his defense. [*Id.*]

Everest filed a timely notice of removal to federal court on January 23, 2012, premised in part on 28 U.S.C. § 1331 federal question jurisdiction. [R. 1 at 1, 10.] Everest alleges that this controversy arises from a bond required by the FDIC Risk Management Manual of Examination Policies § 4.4, which creates a "law of the United States," 28 U.S.C. § 1352, and therefore confers federal question jurisdiction on this cause of action. [R. 1 at 10-11.] Everest's removal is also premised on 28 U.S.C. § 1332 diversity jurisdiction. [R. 1 at 7.] Monticello identifies its loss as exceeding $2 million, clearly surpassing the $75,000 threshold. [R. 1-2 at 8.] Section 1332's requirement of complete diversity on both sides of the action is the primary point of contention in this case. *See* 28 U.S.C. § 1332(a)(1). Everest has alleged that Monticello has joined Hammer solely to defeat diversity because there is no colorable basis on which Monticello could recover against Hammer. [R. 1 at 4-5.] If Hammer has been fraudulently joined, his citizenship should not be considered for diversity jurisdiction analysis, thus perfecting complete diversity.

Monticello has responded by filing a motion to remand this action for lack of federal question jurisdiction, claiming that it was not required by federal law to purchase the Fidelity Bond. [R. 13 at 14-15.] Monticello argues that although the FDIC has the power to enact a manual, the manual does not carry the same force as a regulation, and thus the controversy does not concern a "bond executed under any law of the United States" for purposes of federal question jurisdiction. [*Id.*] Monticello also requests the action be remanded for lack of complete diversity. [R. 13 at 2.] A removed action must be remanded if there is any colorable basis upon which a plaintiff may recover against a non-diverse defendant. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). Monticello argues that if Monticello advances payment of costs for Hammer's defense, and it is later determined that Hammer does not meet KRS 271B.8-510,

4

Monticello will seek recovery of the costs. [R. 26 at 7]. According to Monticello, this scenario creates a colorable basis upon which it can recover from Hammer, which would make him a real party in interest and destroy complete diversity. *Id.*

Hammer's motion to dismiss contests Monticello's claim that he is a real party in interest. According to Hammer, Monticello has not stated a claim against him for which relief can be granted, and the action against him should be dismissed under FRCP 12(b)(6). [R. 6 at 3-5.] In its FRCP 12(c) motion, Defendant Everest agrees that Monticello has failed to make a colorable claim against Hammer, and argues that Hammer should be dismissed from the case based on fraudulent joinder. Because the 12(b)(6) motion was filed first, the Court will address that motion first, although the arguments in all three motions are integrally connected.

## C

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the Plaintiff's complaint. In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). Recently, the Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); s*ee also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009). Stated otherwise, it is not enough for a claim to be merely possible; it must also be "plausible." *Courier*, 577 F.3d at 630. According to the court,

facial plausibility requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility requirement is not the same as probability, it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *Twombly*, 550 U.S. at 570.

Here, Monticello seeks a declaratory judgment that it has no duty to pay Hammer's legal fees or indemnify him for his legal expenses already incurred. Hammer, however, has not requested such indemnification, and argues that Monticello's claims against him should be dismissed because no "justiciable controversy" exists between him and Monticello. [R. 6 at 3.] Article III of the Constitution requires that claims in federal litigation involve justiciable controversies. *Friends of the Earth, Inc. v. Laidlaw Env'l Servs. (TOC), Inc.*, 528 U.S. 167, 212 (2000); *Safety Nat. Cas. Corp. v. Amer. Special Risk Ins. Co.*, 99 Fed. Appx. 41, 42 (6th Cir. 2004). Similarly, the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, also requires that plaintiffs seeking declaratory judgments plead facts that establish a "justiciable controversy," which is distinguished from a "dispute of a hypothetical or abstract character" or one that is "academic or moot." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). A justiciable controversy therefore must be "definite and concrete, touching the legal relations of parties having adverse legal interests" in order to warrant a declaratory judgment. *Id*. at 240-41; *Lake Carriers' Ass'n v. MacMullen*, 406 U.S. 498, 506 (1972) (explaining that in actions for declaratory judgments, the complaint must present an actual controversy affecting the specific rights of the parties in a way that is sufficiently immediate to warrant a declaratory judgment). Thus, to survive a 12(b)(6) motion, Monticello must plead facts that establish the existence of a justiciable controversy that affects Hammer's legal rights.

6

According to Hammer, Monticello's complaint fails to plead facts sufficient to establish that he is a real party in interest, and the action against him should be dismissed. [R. 6. at 4-5.] To determine whether Monticello has adequately stated a proper claim against Hammer, the Court will examine the actual language used by Monticello in its complaint. First, ¶ 2 of Monticello's complaint summarizes the relief sought, which Monticello later repeats in Counts 1-3. Monticello seeks a declaratory judgment that:

> "(a) it has no duty to reimburse *Everest* for the legal fees *it has incurred* in hiring counsel. . .;" (b) it is not legally permitted to indemnify Garry Hammer . . . for expenses incurred in defending claims against him and has *no duty to reimburse Everest* for the legal fees *it has incurred* in providing counsel to defend Hammer's interests; and (c) *Everest is obligated* to pay the legal fees Monticello Bank's chosen counsel, Frost Brown Todd LLC, has incurred, and continues to incur, in representing Monticello Bank's interests."

[R. 1-1 at ¶¶ 2, 56-57, 60, 63 (emphasis added).] It would appear from this language that Everest is the party who has incurred legal fees, and that Everest is the party with whom Monticello has the dispute. As Monticello admits, Everest has already paid the cost of Hammer's defense, and the basis of the dispute is whether Monticello must reimburse Everest for those costs. [R. 13 at 6.] Monticello does not contest the fact that Hammer has not paid the legal fees himself, nor does Monticello argue that Hammer has requested reimbursement of any legal fees. In fact, Monticello admits that Hammer has not attempted to obtain any money from Monticello. *See* Compl. ¶¶ 41, 44; Amended Compl. ¶¶ 44, 47, 48. Since Hammer has not requested indemnification, nor has he even expended his own resources on his defense, Monticello's concern appears moot, or at least merely academic. *See Aetna Life Ins. Co*., 300 U.S. at 240.

7

A plaintiff's allegations must give rise to some actionable theory upon which the Court could grant relief. Under Rule 12(b)(6), "a complaint containing a statement of facts that merely creates a *suspicion* of a legally cognizable right of action is insufficient." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citing *Twombly*, 550 U.S. at 555). In this case, if the Court grants Monticello the relief it seeks, such a declaration will not resolve any present controversy between Monticello and Hammer, and indeed will only be useful to Monticello in a purely hypothetical situation – *i.e*., if Everest demands reimbursement from Hammer, and if Hammer then requests it from Monticello. The requested declaration, therefore, would only address a situation which may never arise and would thus be advisory rather than resolve a present controversy. As explained above, this is not a permitted use of declaratory judgments. *See Lake Carriers' Ass'n*, 406 U.S. at 506; *Aetna Life Ins. Co*., 300 U.S. at 241.

Second, the complaint's only explanation of why Hammer is included as a defendant is found in ¶ 3, in which Monticello states:

> "Hammer is a real party in interest to this declaratory judgment action because *Everest* has demanded that Monticello Bank reimburse *Everest* for the legal fees *it has incurred* on behalf of Hammer."

[R. 1-1 at 2 (emphasis added).] Such assertions demonstrate that Everest is seeking reimbursement on the basis of an insurance contract it has with Monticello, again revealing a dispute between Everest and Monticello rather than with Hammer. These portions of the complaint quoted above are the only statements offered in Monticello's complaint from which this Court can construe a claim against Hammer. Although the FRCP does not require Monticello to include "'detailed factual allegations'" in its complaint, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting

8

*Twombly*, 550 U.S. at 555). Here, Monticello's complaint does not even say how Hammer unlawfully harmed it. Instead, each time Hammer is mentioned in the complaint is in the context of whether Everest or Monticello is responsible for his legal defense. If Everest has demanded that Monticello indemnify Hammer, that issue is between Monticello and Everest as a result of their insurance policy and can be resolved apart from Hammer's presence in this lawsuit.

In attempting to identify a claim against Hammer, the parties also contest whether Monticello can use its amended complaint, which it filed on February 22, 2013, after removal had occurred, and after the motion to remand and Hammer's motion to dismiss had already been filed. Diversity jurisdiction must be determined at the time of the complaint and removal. *Anderson v. Merck & Co., Inc*., 417 F.Supp.2d 842 (E.D. Ky. 2006). The parties do not debate this point – rather, Monticello claims that its Amended Complaint merely "serves to clarify the jurisdictional facts" in order to "flesh[] out its already-existing claims against Hammer." [R. 26 at 1-2.] The amended complaint contains two additional counts, yet even if the Court uses the amended complaint, the Court still finds nothing that requests specific relief from Hammer.

For example, in paragraph 3, Monticello adds that "Hammer purportedly is seeking payment of attorneys fees and damages on his own behalf and Monticello seeks a declaratory judgment on issues between Monticello and Hammer." [R. 14 at 2.] Monticello provides nothing beyond mere speculation to show that Hammer is seeking such payment, and Hammer denies having sought anything from Monticello. In paragraph 5, Monticello claims that "Hammer owes indemnity to Monticello Bank for any amounts the Bank pays for his legal expenses or damages." *Id*. Since Monticello has not paid for his expenses, and since no court has yet ruled on that issue, this "claim" is hypothetical. While the amended complaint admits that "Hammer has not directly requested indemnity" [R. 14 at ¶¶ 44, 47], Monticello alleges that "it is

9

presumed that Hammer is indirectly requesting such indemnification through Everest," and that his manner of doing so is improper. [R. 14 at ¶ 48.] Without "further factual enhancement," however, such allegations state nothing more than "labels and conclusions," which are insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). According to Monticello, a "controversy exists between Monticello Bank and Hammer regarding Monticello Bank's obligation to pay Hammer's legal fees," but Hammer has not requested payment from Monticello, and Monticello alleges nothing that would lead the Court to believe otherwise. [R. 14 at ¶ 69.] Although the pleading requirements are not very strict, a plaintiff cannot simply offer "naked assertions" that a dispute exists without giving some indication of its existence. *See Iqbal*, 556 U.S. at 678; *Bishop*, 520 F.3d at 519 ("Conclusory allegations or legal conclusions masquerading as factual allegations" are not sufficient to survive a motion to dismiss.").

Finally, Monticello has added a sixth count to its amended complaint for common law indemnity as to Hammer, claiming that "[i]f Everest were to obtain a judgment" requiring Monticello to pay Hammer's legal fees, "then Hammer is liable to indemnify Monticello Bank for all or part of the legal fees." [R. 14 at ¶ 79.] Monticello also included in this count a request that the Court award Monticello "indemnity from Hammer for any amounts that Monticello Bank is adjudicated liable to Everest for Hammer's legal fees or damages." [*Id.*] Yet again, Monticello is trying to assuage its concerns about possible outcomes of purely hypothetical situations. The Court has not yet adjudicated the dispute between Monticello and Everest, and it cannot make declarations about the possible results of such future judgments. The alleged "claims" in the amended complaint all engage in speculation, which does not satisfy the legal requirements for stating a claim upon which relief can be granted. *Bishop*, 520 F.3d at 519

(determining that allegations contained in the complaint "'must be enough to raise a right to relief above the speculative level'") (quoting *Twombly*, 550 U.S. at 555); *see also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

In its motion to remand, Monticello further elaborates on its indemnity claim by explaining that its intention was to request indemnity from Hammer "if it is adjudged that the Bank must pay Hammer's legal fees or damages." [R. 13-1 at 7-8.] In support of this request, Monticello insinuates that because Hammer has not properly requested indemnification thus far, he must be "hid[ing] behind the insurance company in seeking payment on his own behalf." [*Id*. at 7, 9.] Monticello therefore wants the Court to declare in advance that it is not obligated for "any future fees or damages for which Hammer is assessed liable." *Id*. at 10. Monticello is concerned that depending on the outcome of its dispute with Everest, Everest may demand that Hammer pay his own attorney fees, at which point Hammer may then seek reimbursement from Monticello. [*Id*. at 7.] Accordingly, Monticello requests that the Court preemptively preclude Hammer from ever seeking reimbursement from the bank. Such reasoning merely speculates as to what Hammer and Everest might do in the future. To survive a motion to dismiss, the plaintiff must suggest an actual entitlement to relief by including allegations which go beyond mere speculation. *See Iqbal*, 556 U.S. at 678; *Bishop*, 520 F.3d at 519.

Moreover, whether Hammer can ever be liable for expenses to Monticello depends on which component of the D&O agreement is enforced. The D&O policy has two components, Agreement A and Agreement B.[1] Agreement A covers the expense of defending individual

---

[1] D&O policies are often split into two separate agreements to clarify the types of obligations the insurance company is undertaking. One policy completely covers employee defense costs except for required indemnification by the company. The other policy covers company costs, including indemnification, for all costs beyond a deductible fee called a retention. Thus, the policy insulates individuals entirely from the costs of litigation on behalf of the parent company, while the company is protected to whatever degree the retention fee allows. The suggestion

directors and officers at the company excluding costs which the company must indemnify. [R. 23 at 6.] Agreement B covers the cost of company defense, including indemnification costs, after the company pays a retention. [R. 23 at 7.] The cost allocation between Monticello and Everest is determined by the KSR 271B.8-530 duty to indemnify. [R. 26 at 7.] If Monticello is not required to indemnify Hammer, then Everest will bear the entire cost of his defense under Agreement A. If Monticello is required to indemnify Hammer, Agreement B stipulates that Monticello will pay the first $50,000 of expenses incurred indemnifying Hammer as a retention, and costs beyond $50,000 will be covered entirely by Everest.

Even when construing the complaint in the light most favorable to the plaintiff, the complaint's allegations must still include "'all material elements to sustain a recovery under some viable legal theory.'" *Bishop v. Lucent Technologies, Inc*., 520 F.3d at 519 (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Here, whether or not Monticello must indemnify Hammer, the costs will be born either by Monticello or by Everest. In neither case would Hammer be liable for his own defense costs. Monticello recognizes that KRS 271B.8-510 could not provide recovery against Hammer --- this is why they argue that "if Monticello is permitted to advance [Hammer's] defense costs. . . [and] it is later determined that he did not meet the statutory standard of conduct. . ." Monticello might recover the advance from Hammer. However, even in the event that Monticello's duty to indemnify Hammer is later abrogated, the liability to cover Hammer's defense costs still lies with Everest. Under no interpretation of the indemnity statute does Monticello have a colorable basis for recovery against Hammer.

---

that an employee is liable for his own defense costs runs counter to the purpose and structure of a D&O policy. *See* Lawrence J. Trautman & Kara Altenbaumer-Price, *D&O Insurance: A Primer*, 1 Am. U. Bus. L. Rev. 337, 346-47 (2012).

Under FRCP 17(a), the real party in interest "is the person who is entitled to enforce the right asserted under the governing substantive law," and this analysis "turns upon whether the substantive law creating the right being sued upon affords the party bringing the suit a substantive right to relief." *Certain Interested Underwriters at Lloyd's v. Layne*, 26 F.3d 39, 43 (6th Cir. 1994). In this case, the outcome of an action for a declaratory judgment stating whether Monticello must reimburse Everest appears to have no bearing on Hammer's rights, obligations, or potential liabilities. As explained above, Monticello's reasoning is too speculative to establish that Hammer has or claims any interest that will be affected by this suit. The declarations Monticello requests would only affect Hammer's interest in the future if several different hypothetical occurrences take place. The Court is not permitted to grant declaratory judgments premised on the vague possibility of future events which may or may not occur. *See Aetna Life Ins. Co.*, 300 U.S. at 240-41; *Bishop*, 520 F.3d at 519.

Thus, the Court finds that Mr. Hammer correctly states that Monticello has not pled facts sufficient to establish a plausible claim against Hammer. *See Courier*, 577 F.3d at 630 (citing *Twombly*, 550 U.S. at 556). The issues which Monticello claims are in dispute can be resolved without Hammer's presence in the lawsuit, and thus Hammer is not a real party in interest to this action. *See* FRCP 17(a). Accordingly, Hammer should be dismissed from the case.

**D**

Monticello has challenged removal of this case with a motion to remand. A defendant may remove a civil action brought in state court to federal court only if the action is one over which the federal court could have exercised original jurisdiction. *See* 28 U.S.C. §§ 1441, 1446. This court has original federal question jurisdiction over civil actions which arise under the "Constitution, laws, or treaties" of the United States, 28 U.S.C. § 1331, including any

13

controversy over a "bond executed under any law of the United States." 28 U.S.C. § 1352. This Court has original "diversity" jurisdiction over all civil actions when "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the dispute is between" parties who are "citizens of different states." *See* 28 U.S.C. § 1332(a)(1). Because federal courts are courts of limited jurisdiction, any doubts regarding federal jurisdiction should be construed in favor of remanding the case to state court. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109 (1941); *Cole v. Great Atlantic & Pacific Tea Co.*, 728 F. Supp. 1305, 1307 (E.D. Ky. 1990) (citations omitted). In determining the appropriateness of remand, a court must consider whether federal jurisdiction existed at the time the removing party filed the notice of removal. *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996). Furthermore, the removing defendant bears the burden of showing that removal was proper. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993), *rev'd on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010); *Fenger v. Idexx Laboratories*, 194 F. Supp. 2d 601, 602 (E.D. Ky. 2002) (citations omitted).

Plaintiff Monticello's motion to remand attacks Everest's removal of this case on three grounds. Specifically, Monticello contests Everest's claims of federal question jurisdiction, diversity jurisdiction based on fraudulent joinder, and fraudulent misjoinder. First, Monticello argues that this Court lacks federal question jurisdiction because, contrary to what Everest claims, no federal law required Monticello to purchase the Fidelity Bond. [R. 13 at 13-15.] Everest issued the fidelity bond to Monticello under the direction of an FDIC manual in order to provide indemnity to Monticello as required by the FDIC. [R. 23 at 16-17.] According to Monticello, while FDIC regulations may govern national banks, the regulations do not require a state bank such as Monticello to maintain fidelity insurance coverage. [R. 13 at 13.] Although

14

the FDIC has the authority to establish binding rules through a manual, such rules are not laws for the purposes of 28 U.S.C. § 1352. *Fifth Third Bank v. Progressive Cas. Ins. Co.*, 2011 WL 5037178, at *3 (W.D.N.C. Oct. 24, 2011) ("[Manuals] may be permitted, but that does not mean they have the force of law, like regulations. For this reason, only regulations requiring a bond can satisfy section 1352's requirement that the bond be executed under any law of the United States."). The logic of the North Carolina District Court is persuasive to the Court. Fidelity bond coverage is required by the FDIC's Risk Management Manual in sections 4.4 and 12.1, but because the FDIC manual is not a law of the United States for the purposes of § 1352, a controversy arising from its bond requirement does not confer federal question jurisdiction.

Although the Court agrees with Monticello that it cannot exercise federal question jurisdiction over this case, a more pertinent issue is whether diversity jurisdiction exists. In order for diversity jurisdiction to attach, "'all parties on one side of the litigation [must be] of a different citizenship from all parties to the other side of the litigation.'" *Coyne v. Amer. Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999) (citations omitted). When removal is based on diversity of the parties, "'[a] defendant desiring to remove a case has the burden of proving the diversity requirements' by a preponderance of the evidence," *Everett v. Verizon Wireless, Inc*., 460 F.3d 818, 829 (6th Cir. 2006) (quotation omitted). Furthermore, "complete diversity" of citizenship must exist both at the time of removal and at the time of commencement of the case.[2] *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999) (citations omitted). Here, Monticello is a citizen of Kentucky, and Everest is not. Although Defendant Hammer is also a citizen of Kentucky, as the Court has already explained above, Hammer is not a real party in

---

[2] Whether Monticello first appropriately included Hammer in the original complaint or the amended complaint is irrelevant in light of the Court's subsequent analysis.

15

interest to this action.[3]  Because the Court has accordingly dismissed Hammer from this case, complete diversity exists between the parties.  *See* Rule 17(a).  Moreover, Monticello seeks recovery in excess of the $75,000 required by statute for diversity cases, *see* Compl. ¶¶ 64-68, and therefore the Court has original jurisdiction over this case under 28 U.S.C. §§ 1441, 1446. [R. 1 at 8.]  Having determined that the Defendants have proven by a preponderance of the evidence that both the amount-in-controversy and diversity requirements were met at the time of removal, this Court has jurisdiction and remand would be inappropriate at this time.

Defendant Everest filed an objection to Monticello's motion to remand that Everest also styled as a 12(c) motion for judgment on the pleadings, based on its contention that Defendant Hammer had been fraudulently joined.  "To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne v. American Tobacco Co*., 183 F.3d 488, 493 (6th Cir. 1999).  As has been demonstrated above, there is "no colorable basis" for predicting that Monticello may recover against Hammer, and therefore his presence as a non-diverse defendant would not result in a remand.  *Coyne*, 183 F.3d at 493.  Because Hammer's motion to dismiss has been granted, however, there is no need to conduct a further analysis of the parties' arguments concerning fraudulent joinder.

### III

For the reasons stated herein, and pursuant to 28 U.S.C. §§ 1331-2 and 28 U.S.C. § 1446(a), as elucidated by subsequent case law, it is hereby **ORDERED** as follows:

---

[3] Because diversity jurisdiction exists now that Hammer has been removed from this case, there is no need to address the parties' arguments concerning the applicability of the doctrine of fraudulent misjoinder.  (Plaintiff accurately points out that this area of law is somewhat unsettled, but the Court finds it unnecessary to reach a determination on the matter since jurisdiction has been established on other grounds.)

(1) Defendant Hammer's Motion to Dismiss for failure to state a claim [R. 6] is **GRANTED** and all claims against him are dismissed with prejudice;

(2) The Plaintiff's Motion to Remand [R. 13] is **DENIED**;

(3) Defendant Everest's Motion to Dismiss [R. 22] is **DENIED as MOOT**;

(4) Plaintiff's Motion for Leave to File a Surreply [R. 30] is **DENIED**, and the parties' surreplies were not considered by the Court in making its determination in this case.

This 26th of September, 2013.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge